UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XEROX CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>AC SQUARE, INC.,<br><br>    Defendant. | Case No. 15-cv-04816-DMR<br><br>**REQUEST FOR SUPPLEMENTAL EVIDENCE**<br><br>Re: Dkt. No. 16 |

In this breach of contract action, Plaintiff Xerox Corporation moves the court for entry of default judgment against Defendant AC Square, Inc. pursuant to Federal Rule of Civil Procedure 55(b)(2). [Docket No. 16.] Plaintiff seeks actual damages, interest, the immediate return of its property in Defendant's possession or payment of its full market value, and attorneys' fees and costs. For the reasons stated below, the court orders Plaintiff to submit supplemental evidence in support of its request for damages.

## I.   BACKGROUND

From 2009 to 2014, the parties entered into seven product lease contracts for copier equipment and one product maintenance contract. In connection with its Motion for Default Judgment, Plaintiff submitted the eight written contracts, each of which indicates the length of the agreement (in months) and the minimum monthly payments due. Declaration of Janet Atkinson ("Atkinson Decl."), Dec. 30, 2015, Exs. 1, 4, 7, 10, 12, 15, 18, 21 (Lease Agreements and Maintenance Agreement). Plaintiff alleges that Defendant breached all contracts on April 18, 2015.

On October 19, 2015, Plaintiff filed this lawsuit seeking contract damages in the form of the "principal sum" remaining under each of the eight contracts, an interest rate of 18% per year (or 1.5% per month), recovery and possession of all leased property or its fair market value, and

attorneys' fees and costs.

Plaintiff served Defendant with the summons and Complaint by substitute service on November 13, 2015. [Docket No. 9 (Proof of Service).] Defendant did not file a responsive pleading or otherwise appear. The Clerk entered Defendant's default on December 28, 2015. [Docket No. 13.] After Plaintiff filed its Motion for Default Judgment, the court ordered Plaintiff to submit supplemental briefing, which Plaintiff timely filed. [Docket No. 18 (Suppl. Br.).] The court determines that this matter is suitable for resolution without oral argument. *See* N.D. Cal. Civ. L. R. 7-1(b).

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment.")

Before assessing the merits of a default judgment, a court must ensure the adequacy of service on the defendant, as well as confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980

F.2d 1261, 1267 (9th Cir. 1992).

### III.   ANALYSIS

#### A.   Jurisdiction

Plaintiff asserts the existence of federal diversity jurisdiction. Compl. ¶ 1. Plaintiff is incorporated in the state of New York with a principal place of business in Connecticut. Defendant is incorporated in California with a principal place of business in California. Compl. ¶¶ 3-4. Plaintiff alleges that the amount in controversy exceeds $75,000. Compl. ¶ 2. These allegations establish a basis for diversity jurisdiction, as well as personal jurisdiction over Defendant. *Goodyear Dunlop Tires Ops., S.A., v. Brown*, 131 S.Ct. 2846, 2853-54 (2011) ("the paradigm forum for the exercise of general jurisdiction . . . for a corporation . . . [is] one in which the corporation is fairly regarded as at home").

#### B.   Adequacy of Service

Plaintiff served Defendant with the summons and Complaint by substitute service on Afshin Ghaneh, Defendant's agent for service of process.

Under the Federal Rules of Civil Procedure, a domestic or foreign corporation must be served in a judicial district of the United States, and may be served in the manner prescribed for serving individuals under Rule 4(e)(1). Fed. R. Civ. P. 4(h)(1)(A). A defendant may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). In connection with its request for default judgment, Plaintiff asserts that service of the summons and complaint on Defendant complied with California Code of Civil Procedure section 415.20(a), which provides:

> [i]n lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in Section 416.10, 416.20, 416.30, 416.40, or 416.50,[1] a summons may be served by

---

[1] California Code of Civil Procedure sections 416.10, 416.20, 416.30, 416.40, and 416.50 set forth permissible methods of serving corporations, joint stock companies or associations, unincorporated associations, and public entities. Under section 416.10, a corporation may be served by delivering a copy of the summons and complaint to "a person authorized by the corporation to receive service of process." Cal. Civ. Code § 416.10(b).

3

> leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. When service is affected by leaving a copy of the summons and complaint at a mailing address, it shall be left with a person at least 18 years of age, who shall be informed of the contents thereof. Service of a summons in this manner is deemed complete on the 10th day after the mailing.

Cal. Civ. Proc. Code § 415.20(a).

Plaintiff submitted evidence that Afshin Ghaneh is Defendant's agent for service of process. Suppl. Br. at 1-2, Ex. 2. Plaintiff did not personally serve Ghaneh but left the summons and complaint with Jane Doe, "a person at least 18 years of age apparently in charge at [Ghaneh's] office or usual place of business," who refused to give her name. Plaintiff also mailed Ghaneh a copy of the documents the same day. [Docket No. 9] (Proof of Service). In light of these facts and supporting documentation, the court finds that service of process in this case was adequately effected.

### C.    Application of the *Eitel* Factors

Turning to the first *Eitel* factor, Plaintiff will suffer prejudice if the court does not enter a default judgment against Defendant because Plaintiff otherwise has no means to recover the money and property at issue. *Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Therefore, the first factor weighs in favor of granting Plaintiff's motion.

Plaintiff also fulfills the second and third *Eitel* factors. For each of the eight contracts, Plaintiff alleges claims for: (1) breach of contract, (2) account stated, and (3) claim and delivery. A breach of contract claim under California law requires that a plaintiff show: (1) a contract; (2) plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; (4) and resulting damage to plaintiff. *Wall St. Network Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008). Plaintiff demonstrates the existence of eight contracts, as well as performance on its part. Plaintiff also alleges that Defendant breached all eight contracts on April 18, 2015. Finally, Plaintiff alleges damages from Defendant's breach in the form of property and money. Plaintiff has sufficiently pled meritorious claims for breach of contract.

Account stated is a common count that is a "simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness." *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004). Account stated is not a specific cause of action but an alternative way of seeking the same recovery demanded in a specific cause of action. *Id*. As discussed above, Plaintiff has sufficiently pled breach of contract so account stated is sufficient as well.

Plaintiff also alleges claim and delivery for all products under each contract. Claim and delivery is not a separate action but a remedy to return specific property and to award incidental damages. *Adler v. Taylor*, No. 04-8472-RGK(FMOX), 2005 WL 4658511, at *3 (C.D. Cal. Feb. 2, 2005). In California, courts use claim and delivery which is identical to the federal remedy of replevin. *Id*. An action for claim and delivery requires a plaintiff to show a right to possession and the defendant's wrongful possession of the property at issue. *Id*; *see Stalcup v. Liu*, No. 11-00002-JSW, 2011 WL 1753493, at *6 (N.D. Cal. April 22, 2011); Cal. Civ. Code § 3379; Cal. Civ. Proc. Code § 512.010. Since Plaintiff adequately pled breach of contract, it has sufficiently stated claim and delivery for all contracts concerning leased products. However, the contract entitled "Maintenance Agreement" appears to govern repair services and "consumable supplies" (such as ink). Atkinson Decl., Ex. 7. The complaint does not make clear what property is in Defendant's possession that may be subject to claim and delivery.

In sum, Plaintiff has submitted a legally sufficient and meritorious complaint except with respect to claim and delivery based on the maintenance contract.

As to the fourth factor, "[w]hen the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Const., Inc.*, No. 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted). The sum of damages, interest, attorneys' fees, and costs that Plaintiff requests is $126,869.43 as of January 4, 2016. Mot. at 6. Plaintiff also seeks return of its property in Defendant's possession or fair market value of such property. Plaintiff estimates the fair market value to be $44,716.00. Atkinson Decl. ¶ 138. As discussed below, while the court finds deficiencies with respect to Plaintiff's damage calculations,

the sum of money appears to be "tailored to the specific misconduct" of Defendant. Therefore, the fourth factor weighs in favor of granting Plaintiff's motion.

Under the fifth *Eitel* factor, the court assesses the likelihood of dispute between the parties regarding the material facts of the case. Where a plaintiff has filed a well-pleaded complaint alleging the elements necessary to establish its claims, and the Clerk has entered default upon defendant's failure to answer, a court may find the possibility of a dispute as to material facts is unlikely. *See Capitol Records v. Barrera*, Case No. 06-07212-JSW, 2007 WL 1113949, at *3 (N.D. Cal. April 13, 2007); *Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005). Here, Defendant failed to appear and respond to the Complaint and the Clerk entered default accordingly. Because Plaintiff's well-pled allegations, except as to damages, are presumed to be true, *TeleVideo*, 826 F.2d at 917-18, it adequately alleged its claims against Defendant, as set forth above. Plaintiff served Defendant with its motion for default judgment as well as its supplemental briefing. [Docket Nos. 6, 9, 18 (Proofs of Service).] Nevertheless, Defendant did not appear or file any opposition to Plaintiff's motion. Accordingly, the record reflects Defendant's silence despite notice of the proceedings and several opportunities to respond. Therefore, the court finds there is little possibility of a dispute of material facts.

Finally, under the sixth *Eitel* factor, nothing in the record suggests that Defendant defaulted due to excusable neglect. As noted earlier, Plaintiff served Defendant with submissions relating to the case throughout the pendency of this action and Defendant still failed to participate in the litigation. The default of Defendant cannot be attributed to excusable neglect, so the sixth factor weighs in favor of Plaintiff.

The final *Eitel* factor examines whether the policy of favoring a decision on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1472 ("[c]ases should be decided on their merits whenever reasonably possible"). However, "the mere existence of Fed.R.Civ.P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation and citation omitted). Because Defendant failed to defend against this action, a decision on the merits would be "impracticable, if not impossible." *Truong*, 2007 WL 1545173, at *13 (citation omitted). Therefore, the court finds this factor, though it weighs against

default judgment, does not preclude granting it.  *See Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996).

In sum, the *Eitel* factors weigh in favor of granting Plaintiff's motion for default judgment.

**D.      Remedies**

Although the factual contentions of the operative complaint are accepted as true when determining the liability of a defaulting defendant, this rule does not apply to statements regarding damages.  *See TeleVideo*, 826 F.2d at 917-18.  To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit.  *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see PepsiCo, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

Plaintiff moves for default judgment on all three of its claims for relief: breach of contract, account stated, and claim and delivery.  Plaintiff submitted the Declaration of Janet Atkinson in support of its prayer for relief.  [Docket No. 16-1.]  As explained below, it is unclear whether the evidence in the record supports Plaintiff's damage calculations and request for relief. Accordingly, although the *Eitel* factors weigh in favor of granting default judgment, the court orders Plaintiff to submit supplemental evidence to support and clarify its request for damages.

**1.      Contract Damages**

Plaintiff failed to submit sufficient proof or explanation in support of its contract damage calculations.  There are discrepancies between Plaintiff's pleadings and the actual contract terms. Plaintiff has not provided enough support for the court to conduct a proper assessment to determine whether Plaintiff is entitled to the damages it seeks.

For example, Plaintiff's first claim for relief regarding the contract in Exhibit 1 to the Atkinson Declaration states that "Pursuant to the terms of the Agreement, Plaintiff has elected to accelerate the balance of the Agreement.  The balance of the rental payments under the Agreement is $39,115.75. Additionally, pursuant to the agreement, Defendant is liable for interest on all sums due from the date of default at 1.5% per month".  Compl. ¶¶ 10-11.  However, the "default and remedies" provision of the contract itself states, in relevant part, that in the event of default, "Xerox may. . . remove equipment at your expense and require immediate payment. . . of (a) all

7

amounts then due, plus interest from the due date until paid at a rate of 1.5% per month [and] (b) minimum payments remaining in the term, discounted at 4% per annum. . ." Atkinson Decl., Ex. 1 (at ECF p. 8, § 19).

Plaintiff's Complaint and submissions fail to track the terms set forth in the contract. For this reason, the court is unable to determine the relationship between its request for the "balance of rental payments under the Agreement" in the sum of $39,115.75 alleged in its Complaint, and "all amounts then due" and "minimum payments remaining in the term, discounted at 4% per annum," as specified in the contract term.

Additionally, Plaintiff alleges that it is entitled to the 1.5% interest rate for the entire "principal sum." Mot. at 4-6. This appears inconsistent with the contract provision outlining a 4% discount on remaining minimum payments in the event of default. Based on the conclusory nature of Plaintiff's calculations, the court cannot determine if Plaintiff applied the 4% discount to the amount requested, or if Plaintiff has reason to not apply the discounted interest rate provision. Similar problems exist for all other product contracts.

In addition, Plaintiff's seventh claim relates to breach of a maintenance contract. Compl. ¶¶ 43-51. Plaintiff requests the "principal sum" of the contract, which allegedly equals "$2,182.75" plus 1.5% interest per month to total "$2,463.70." Mot. at 4. However, the contract "default and remedies" provision states that Plaintiff may only recover "(a) all amounts then due, plus interest from the date due date until paid at the rate of 1.5% per month [and] (b) the remaining Minimum Payments, not to exceed 6 such payments if this Agreement is for a one-year Term and 12 such payments for a multi-year Term. . . " Atkinson Decl., Ex. 7 (at ECF p. 8, § 13). The contract "called for monthly payments in the amount of $11.00, plus print charges," (Compl. ¶ 45), which does not appear to bear any relation to Plaintiff's calculation of its loss. Again, Plaintiff's conclusory calculations do not provide sufficient evidence that it is entitled to the amount it requests.

As a final example, Plaintiff alleges that Defendant breached all eight contracts on April 18, 2015. The contract provisions state that "any partial months in the Term will be billed on a pro rata basis." *See, e.g.* Atkinson Decl., Ex. 1 (at ECF p. 8 §12). Again, Plaintiff's conclusory

8

calculations do not indicate if it applied this pro rata calculation, or whether Plaintiff had reason to disregard this rate.

In sum, Plaintiff fails to provide sufficient evidence and explanation for the court to determine if its calculations are proper. Plaintiff must submit additional evidence and explain its calculations for each breach of contract claim.

### 2.     Account Stated

Account stated is not a standalone cause of action but an alternate way of seeking the same recovery demanded in a specific cause of action. Thus, Plaintiff's prayer for relief for each account stated claim is identical to its prayer for relief for each breach of contract claim. The same deficiencies identified with Plaintiff's contract damage claims apply to these requests for relief under the account stated claims.

### 3.     Claim and Delivery of Personal Property

Plaintiff requests claim and delivery for property leased under each of the eight contracts or "its market value in case delivery cannot be had, or any deficiency due to sale after repossession." Mot. at 4. Plaintiff claims that $44,716.00 is the total fair market value of the property. *See* Atkinson Decl. ¶ 138. The only basis for the fair market valuation is Atkinson's declaration that she is "required to know the market price for used equipment and to keep in constant contact with equipment re-marketers." She states that she is "informed and believe[s] and thereon alleges" that the lump sum fair market value of the equipment at issue is $44,716.00. Atkinson Decl. ¶ 138. This is a conclusory statement of the value of Plaintiff's property. It does not provide the basis for her knowledge, nor does it provide the fair market value for each product, and how it was derived.

Additionally, the contract for claim nine is titled "Maintenance Agreement" and appears to govern repair services and "consumable supplies," such as ink. Atkinson Decl., Ex. 7 (at ECF p. 6). Plaintiff did not indicate what tangible property exists under the Maintenance Agreement to support this form of relief.

These flaws may well be curable. Plaintiff may submit additional evidence to support its claim for relief.

## IV.     CONCLUSION

For the foregoing reasons, the court concludes that the first six *Eitel* factors outweigh the Federal Rules of Civil Procedure's strong preference for a decision on the merits.  However, Plaintiff did not submit sufficient evidence to establish its entitlement to the relief sought.  Accordingly, Plaintiff shall submit additional evidence and briefing within thirty days of this order.  Plaintiff shall immediately serve this Order on Defendant, and shall also serve the additional evidence and briefing at the time of filing.  Plaintiff is ordered to file proofs of service.

**IT IS SO ORDERED.**

Dated: March 30, 2016



Donna M. Ryu
United States Magistrate Judge